[Cite as *State v. Askew*, 2012-Ohio-585.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96649

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLIFTON ASKEW

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534808

**BEFORE:**   E. Gallagher, J., Blackmon, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**      February 16, 2012

**ATTORNEY FOR APPELLANT**

John F. Corrigan
19885 Detroit Road, #335
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Anna M. Faraglia
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant Clifton Askew appeals convictions entered in the Cuyahoga County Court of Common Pleas.   Appellant argues that the trial court erred in allowing the state to present hearsay testimony, that his convictions are against the manifest weight of the evidence, and that he was denied a fair trial due to prosecutorial misconduct.   For the following reasons, we affirm.

**{¶2}** Appellant was indicted on March 18, 2010, and charged with kidnapping in violation of R.C. 2905.01(A)(4) (Count 1), rape in violation of R.C. 2907.02(A)(2) (Count 2), and gross sexual imposition in violation of R.C. 2907.05(A)(1) (Count 3). Counts 1 and 2 included repeat violent offender specifications pursuant to R.C.

2941.149(A) and notices of prior convictions pursuant to R.C. 2929.13(F)(6). Appellant entered pleas of not guilty and the case proceeded to a jury trial on March 23, 2011.

{¶3} It was the evidence at trial that on July 27, 2009, the victim, A.B., visited her friend L.S. at her home. A.B. had met L.S. at a family reunion in July of 2009. A.B.'s mother, S.B., testified that she was acquainted with appellant, the ex-husband of L.S.'s mother, and that appellant was present at the family reunion with L.S. S.B. testified that the day after the reunion she spoke with appellant who offered to take A.B. and L.S. to the mall for back-to-school shopping.

{¶4} A.B. was dropped off at L.S.'s home by her mother. A.B. testified that in addition to L.S., another girl named C.P., L.S.'s mother and appellant's ex-wife, B.A., and the appellant were present at the home that day. A.B., L.S., and C.P. used a computer in the basement of the home to chat on Myspace.

{¶5} According to A.B., while the three girls were on the computer, appellant came down the stairs and used the bathroom in the basement. A.B. testified that when appellant came out of the bathroom, he blindfolded her, pulled her into a bedroom in the basement, and threw her onto a bed. Witnesses for the defense identified the bedroom in the basement as belonging to appellant. A.B. testified that appellant held her down on the bed and kissed her neck and face while putting his hand down her shirt, grabbing her chest. A.B. further testified that appellant put his hand down her pants and inserted his finger into her vagina. The attack ended when A.B. kicked the appellant who then

withdrew. A.B. retreated to L.S.'s room in the home and called her mother to pick her up. Various witnesses offered different times that A.B.'s mother arrived to pick her up but were consistent that it was after dark on that night.

{¶6} A.B. did not immediately tell her mother what had occurred at L.S.'s home but rather confided in her friend V.W. V.W. told her own mother who confronted A.B. and S.B. Subsequently, S.B. contacted police and A.B. provided police with a statement of what had occurred.

{¶7} On March 30, 2011, the jury returned a guilty verdict on all three charges in the indictment including the corresponding specifications. On April 5, 2011, the trial court held a sentencing hearing and merged appellant's convictions under Counts 1 and 2. The trial court sentenced appellant to a prison term of eight years on Count 2 and fifteen months on Count 3. The trial court ordered the sentences to run concurrent to one another. Appellant brought the present appeal, advancing three assignments of error.

{¶8} Appellant's first assignment of error states: "The trial court erred in allowing hearsay identification testimony of appellant."

{¶9} In addition to her testimony regarding the events of July 27, 2009, A.B. testified that prior to that date, but after she met L.S. at the family reunion and exchanged phone numbers, she began receiving phone calls from a blocked number. A.B. testified that an unnamed male identified himself as a detective and asked to speak with her mother. The male called at least seven times and admonished A.B. for having

sex. A.B. testified that during one of the calls, L.S. broke in on the call and identified the "detective" as her uncle. A.B did not tell her mother about the calls and eventually stopped answering calls from private numbers. L.S. did not testify at trial.

{¶10} Appellant argues the trial court erred by allowing hearsay evidence to be introduced in the form of A.B.'s testimony regarding L.S.'s identification of the anonymous detective caller as her uncle.

{¶11} Hearsay is defined in Evid.R. 801 as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 governs the admissibility of hearsay evidence and indicates that hearsay is inadmissible in the absence of an exception.

{¶12} A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Essa*, 194 Ohio App.3d 208, 232-233, 2011-Ohio-2513, 955 N.E.2d 429 (8th Dist.) at ¶ 124, citing *State v. Graves*, 9th Dist. No. 08CA009397, 2009-Ohio-1133, 2009 WL 653091, ¶ 4 (overruled on other grounds). Whether or not the declarant is available as a witness, Evid.R. 803(1) permits the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."

{¶13} Therefore, of central concern to the admission of statements of present

sense impression is the temporal proximity of statements to the event at issue. This is so because "[t]he principle underlying this hearsay exception is the assumption that statements or perceptions describing the event and uttered [closely in time] to the event, bear a high degree of trustworthiness." *Graves* at ¶ 4, quoting *Cox v. Oliver Mach. Co.*, 41 Ohio App.3d 28, 37, 534 N.E.2d 855 (12th Dist. 1987).

**{¶14}** The key to the statement's trustworthiness is the spontaneity of the statement; it must be either contemporaneous with the event or be made immediately thereafter. Essa, *supra* at ¶ 126. A minimal lapse of time between the event and statement indicates an insufficient period to reflect on the event perceived; the declarant's reflection would detract from the statement's trustworthiness. *State v. Ellington*, 8th Dist. No. 84014, 2004-Ohio-5036, 2004 WL 2340287, ¶ 10. "When the statement is the 'product of reflective thinking rather than spontaneous perception,' Evid.R. 803(1) does not apply." *Graves* at ¶ 4, citing *State v. Simmons*, 9th Dist. No. 21150, 2003-Ohio-721, 2003 WL 356281, ¶ 35-36.

**{¶15}** The record reflects that the identification of the anonymous caller as L.S.'s uncle qualifies as a present sense impression. The statement was made contemporaneous with the event, the "detective's" phone call to A.B., and reflects L.S.'s perception of the event without time for reflection. Based upon the circumstances presented, this court cannot find that the trial court abused its discretion in admitting this testimony. The testimony was admissible pursuant to the present-sense-impression

exception to the hearsay rules of evidence.

{¶16}    Appellant's first assignment of error is overruled.

{¶17}    Appellant's second assignment of error states:  "Appellant's convictions were against the manifest weight of the evidence."

{¶18}    In evaluating a challenge based on manifest weight of the evidence, a court sits as the 13th juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
>
>  * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. (Internal citations omitted.)   *Id*. at 387.

{¶19}    This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a

verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether a new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." (Internal citation omitted.) *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995.

{¶20} In support of his claim that the jury lost its way in convicting him, appellant cites inconsistencies in A.B.'s testimony and conduct, specifically that she never indicated to her mother or a social worker that she was vaginally penetrated by appellant. However, the record at numerous points reflects A.B.'s apprehension to discuss the matter with her mother. Furthermore, the social worker testified at trial that she could not recall if A.B. told her she was penetrated because the social worker did not get into those details with A.B. Appellant cites inconsistences between A.B.'s testimony regarding whether appellant removed his penis from his pants at any point during the attack and whether she received assistance in removing the blindfold after the attack. Although A.B. testified at trial that she could hear L.S. in the bedroom at the time of the attack, when questioned regarding the blindfold, A.B. clarified that the portion of her police statement indicating that L.S. helped her remove the blindfold was inaccurate. Regarding whether or not appellant at any point removed his penis from his

pants, A.B. testified that although she was blindfolded, she "thought" that appellant was going to pull his penis out and that was the point when she kicked him and he fled.

{¶21} The present case turned on the credibility of the various witnesses and their conflicting accounts of the events of July 27, 2009. A.B.'s account of the attack was contradicted by witnesses presented by the defense. Geraldine Jones, a defense witness and friend of appellant, testified that she spent seven to eight hours with appellant that day and that he only left her presence four to five times for three to five minutes at a time. B.A., mother of L.S., and appellant's ex-wife, testified that she spent the majority of the day cooking in the kitchen where the door to the basement is situated. She testified that appellant did not go down into the basement. Lamar Jackson, appellant's nephew, testified that he resides at the home and he spent a portion of the day washing clothes in the basement. He saw the three girls on the computer in the basement but did not see an attack. Finally, C.P., a close friend of L.S. testified in direct contradiction to A.B. C.P. testified that appellant never came into the basement that day. C.P. did however contradict Lamar Jackson and testified that she did not see anyone doing laundry in the basement.

{¶22} The trier of fact is in the best position to weigh the evidence and the credibility of witnesses. After reviewing the entire record, weighing all of the evidence, and considering the credibility of witnesses, we find that this was not the exceptional case where the trier of fact "clearly lost its way and created such a manifest miscarriage

of justice that the conviction must be reversed and a new trial ordered." *State v. Leonard*, 104 Ohio St.3d 54, 68, 2004-Ohio-6235, 818 N.E.2d 229.

**{¶23}** Appellant's second assignment of error is overruled.

**{¶24}** Appellant's third assignment of error states: "Appellant was denied a fair trial due to prosecutorial misconduct."

**{¶25}** Appellant argues that the prosecutor engaged in misconduct by insinuating, without any basis, that appellant's trial counsel met with witnesses for the purposes of fabricating testimony. The portions of the record cited by appellant do not support his contentions.

**{¶26}** The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484; *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 592, 112 L.Ed.2d 596. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Bey*, *supra*.

**{¶27}** Our focus, upon review, is whether the prosecutor's comments deprived appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *State*

*v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, 2010 WL 4684717, at ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 78-79, 641 N.E.2d 1082 (1994), overruled on other grounds.

**{¶28}** As stated above, the portions of the trial testimony to which appellant cites do not support his argument that the prosecutor insinuated that appellant's attorney met with witnesses to assist them in fabricating testimony. The questioning by the prosecutor in the case sub judice does not approach the improper questioning found in the case cited by appellant, *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, wherein the prosecutor without any factual basis asserted that defense counsel was telling witnesses in the hallway what to testify to.

**{¶29}** Appellant further takes issue with comments made by the prosecutor during closing arguments. In general, prosecutors are given considerable latitude in opening statements and closing arguments. *State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369, 1996-Ohio-81 (1996). In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). A prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

**{¶30}** The test for prejudice regarding prosecutorial misconduct in closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Hessler*, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, quoting *Smith*, *supra* at ¶ 14.

**{¶31}** The wide latitude given the prosecution during closing arguments "does not 'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.'" *State v. Hart*, 8th Dist. No. 79564, 2002-Ohio-1084, 2002 WL 450133, quoting *State v. Freeman*, 138 Ohio App.3d 408, 419, 741 N.E.2d 566 (1st Dist.2000). A prosecutor must avoid "insinuations and assertions which are calculated to mislead the jury." *Smith*, *supra* at ¶ 14. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudice the appellant. *Smith*, *supra* at ¶ 15.

**{¶32}** Again, the portion of the state's closing argument cited by appellant fails to satisfy the above standard. The prosecutor's summarization of Geraldine Jones's testimony, including her testimony that she met with appellant's trial counsel at appellant's home, did not exceed the prosecutor's ability to comment on what the evidence has shown and what reasonable inferences may be drawn therefrom. Furthermore, unlike Hicks, the prosecutor in no way proposed that appellant's counsel told Jones what to testify to and did not offer his personal belief or opinion as to the credibility of a witness.

**{¶33}** Appellant's third assignment of error is overruled.

**{¶34}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, A.J., and
MELODY J. STEWART, J., CONCUR