Defendant-appellant Lawrence Riley appeals his conviction for attempted possession of marijuana in violation of R.C.2925.11(C)(3)(c)/2923.02(A). The court imposed a sentence of 180 days imprisonment, suspended, and placed the appellant on one year of active probation. The court also imposed a fine of $200 and ordered the appellant to perform 40 hours of community service.
The testimony of John Fritz, a Special Agent of the United States Custom Service with over twenty years experience, was presented by the appellee. During September 1996, Agent Fritz was contacted by a U.S. Customs agent in Miami, Florida. As a result of that conversation, Agent Fritz received the package that was subsequently delivered to the appellant's residence. The package was addressed to Mr. Peter Williams, 1789 Coventry, Apartment 3, Cleveland, Ohio 44118. The delivery of the package to the appellant was a joint effort of the U.S. Customs Service, John Wascak from the U.S. Postal Service, and Detective Mark Schmitt of the Cleveland Heights Police Department. The package contained what appeared to be a barnacle drum. Based upon his years of experience, Agent Fritz testified that the package was shipped by express mail from Trinidad.
On September 16, 1996, at approximately 7:25 a.m., the time the package was delivered to the appellant, Agent Fritz was posted in the rear of the apartment building. The parcel was delivered by Postal Inspector Wascak.
Agent Fritz assisted in the arrest and questioning of Eileen Mooney and the appellant. During questioning, the appellant stated that he did not know anything about a drum (T. 34); that he did not know anything about a package; that the package was not his; and that the package would belong to his roommate, Eileen Mooney.
Jeffrey Houser of the Ohio Bureau of Criminal Identification 
Investigation (BCI) testified that the scientific analysis of drum delivered to the appellant contained 705.6 grams (approximately 1 1/2 pounds) of marijuana.
U.S. Postal Inspector John Wascak has held his position for over 26 years. On September 17, 1996, Inspector Wascak delivered the package to 1789 Coventry, Apartment 3, at 7:25 a.m. Inspector Wascak testified that the label was addressed to Mr. Peter Williams; that the word Coventry was misspelled; and that the return label indicated that the package was from Mrs. Jenny Williams, Charles Street, Casscarillo, TWI. The international label indicates that the package was from Trinidad and Tobago.
Inspector Wascak stated that the woman who answered the door signed the receipt in the name of Sue Jones. As the inspector was talking to the woman, he observed the appellant in the background pass through the livingroom. Inspector Wascak left, drove the postal vehicle from the scene and changed his clothing. After the arrest, he was present when the appellant was questioned. The appellant denied knowledge of the package, mentioned that he knew nothing of a drum, and stated that it was his roommate's package. Ms. Mooney, the roommate, appeared to be upset during her questioning.
Commander Jeffrey Barnhard of the Cleveland Heights Police assisted in the delivery of the package. He was stationed in a position to observe the rear of the building. He acted as the eyes and ears of the other officers by means of a radio. The building itself is of brown brick, with apartments on the second level and storefronts on the ground level. Commander Barnhard pulled into the parking lot to the rear of the building in an old Pontiac, and parked in such a position that he could observe the rear of the apartments. He received a broadcast that the package was being delivered. In a matter of seconds he then observed the appellant, alone, exit the rear of the apartment. The appellant walked down the stairs, turned toward Coventry, and was out of his view. The appellant walked back up the driveway and reentered the apartment. Between two and four minutes later, the appellant once more exited the apartment, this time in the company of a woman and small child. The three walked across the parking lot and attempted to enter a white vehicle. Commander Barnhart broadcast this over the radio and in response Detective Schmitt instructed him to stop the vehicle. The commander activated his blue light and stopped the appellant and Ms. Mooney.
Detective Schmitt of the Cleveland Heights Police is an experienced officer with 24 years of service. In the last ten or eleven years he has been involved in excess of 500 controlled substance prosecutions. On September 15, 1996, Detective Schmitt was asked by the customs agent assigned to the Cleveland Drug Task Force to assist in an investigation delivering a package from Miami to Cleveland Heights. The package was to be delivered to 1789 Coventry, number 3, and it contained marijuana.
On September 15, 1996, a two-hour surveillance was conducted of the area. Detective Schmitt conducted a utility trace and learned that Eileen Mooney was the occupant of the apartment. The apartment, located in a building on the southeast corner of Hampshire and Coventry, is located near a bicycle shop. Detective Schmitt testified that a note was found on the postbox for the apartment which stated that "any packages for suite number 3 deliver to the bicycle shop if no answer" (T. 87).
On September 16, 1996, Detective Schmitt photographed the package in question. The wrapping was carefully removed and preserved. Inside the wrapping was a drum. From the drum, Detective Schmitt was able to extract a sample of the inner contents. This was done by utilizing a small hole which had been made by the U.S. Customs officials in Miami when conducting their sample test. A field test was conducted and the material tested positive as marijuana.
During the delivery, Detective Schmitt was positioned in a yellow cab and able to observe both the mail truck and the front of the apartment building. Other officers were assigned to perimeter areas. Detective Schmitt was in possession of a body wire and thus could hear Inspector Wascak's conversation while the package was delivered. After the delivery of the package, Detective Schmitt observed the appellant acting in a suspicious manner. The appellant approached the mail truck and looked inside and then left (T. 96). From his earlier surveillance, Detective Schmitt was familiar enough with the area to know that from a position near the mail truck, a person would be able to hear someone coming down the stairs from the apartment. The detective noted that the appellant left the area of the mail truck as Inspector Wascak was coming down the stairs (T. 97). Detective Schmitt's assessment that the appellant was acting in a suspicious manner was based upon the numerous stake-outs he has conducted in the past. The detective estimated that he had conducted in excess of 300 stake-outs.
A search warrant had been obtained so that subsequent to the delivery of the package, the apartment could be searched (T. 100). Ms. Mooney was present during the search. The box was recovered. The appellant's passport from Trinidad and Tobago was also found and confiscated.
When they returned to the police station, the detective interviewed the appellant. Agent Fritz and Inspector Wascak were present. The appellant was questioned after the officers had spoken with Ms. Mooney. The appellant made an oral statement which he later refused to sign (T. 113). When asked about the package, the appellant responded that a drum came in the mail (T. 115). Detective Schmitt testified that no one in the interview had used the word drum (T. 115). The appellant indicated to the officers that he was a permanent resident of the United States, but has been to Trinidad four times in the last two and one-half years. He had last returned to the United States on August 11, 1996. The appellant admitted that he and Ms. Mooney lived and paid rent at 1789 Coventry, apartment number 3.
On cross-examination, Detective Schmitt testified that the appellant informed the officers that he was waiting for a co-worker to take to work that morning (T. 151). Detective Schmitt stated that he did not believe that the appellant's behavior was consistent with this story. The outside of the package indicated that it contained a drum (T. 160). The detective also testified that the package had not been opened when it was recovered by the officers inside the apartment (T. 163).
Eileen Mooney testified that in August and September 1996, she was living at 1789 Coventry, apartment 2(T. 177). The appellant, a friend of hers at the time, was living in the apartment. In August, the appellant was gone for two weeks visiting family in Trinidad. He was the only close friend she had from Trinidad. On September 17, 1996, Ms. Mooney was not expecting a package. The package which was delivered was addressed to Peter Williams and was from Jenny Williams. Both are persons unknown to her. She opened the door to a delivery person from Federal Express. The instructions on the package were to leave it at the bike shop if it could not be delivered to the apartment. Ms. Mooney testified that she knows no one in Trinidad, and had not given such instructions to anyone.
Ms. Mooney signed for the package as Sue Jones. Ms. Mooney did this because she had been instructed by a man she lived with in the past, Desmond Williams, that she should accept packages not addressed to her in such a way that the signature could not be traced back to her. She believes that if a package is sent to your house, you have a right to know what is in it (T. 186). Once she accepted the package, she placed it on the kitchen table.
Prior to the doorbell ringing, Ms. Mooney and her son and the appellant had been near the back door ready to exit to go to work. When the doorbell rang, she went to the door and the appellant left the apartment to go to the car (T. 189, 192). Ms. Mooney stated that she was taking the appellant to work, as she does every day. When she left the apartment, she went to her vehicle with her son. At that time the appellant was already in the vehicle. Ms. Mooney placed her son in the car and was just entering the vehicle herself when the police arrived.
Ms. Mooney testified that she was arrested for drug trafficking. She was interviewed at the police station for 20 minutes, with a second interview taking place the next day. Ms. Mooney initiated this second contact. On cross-examination, Ms. Mooney stated that the father of her child is named Desmond Williams. Mr. Williams once stored a pound of marijuana in the freezer. Several days after she was released from jail, she saw Mr. Williams (T. 205). Prior to that she had not seen him for a year.
The appellant sets forth four assignments of error.
The first assignment of error:
 THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE PROPER INTERPRETATION OF TESTIMONY BY AN ACCOMPLICE.
The appellant asserts that the court committed reversible error when it failed to instruct the jury as required under R.C.2923.03(D)[1]. The appellant acknowledges that there was no objection raised at trial, but argues that the court committed plain error under Crim. R. 52.
Failure to object to a jury instruction waives the issue absent plain error. State v. Ballew(1996), 76 Ohio St.3d 244, 252. Plain error occurs only where "but for the error, the outcome of the trial clearly would have been otherwise." Ballew, supra,
citing to State v. Underwood(1983), 3 Ohio St.3d 12; State v.Cook(1992), 65 Ohio St.3d 516; State v. Hill(1995), 73 Ohio St.3d 433. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Hill,supra, citing State v. Long(1978), 53 Ohio St.2d 91. In determining whether or not reversible error was committed for failure to give an instruction under R.C. 2923.03(D), the court must consider whether the evidence, without the accomplice testimony, provided overwhelming proof of the defendant's guilt.State v. Edwards(Feb. 28, 1997), Montgomery App. No. 15750, unreported, citing to State v. Williams (1983), 6 Ohio St.3d 281.
In the case sub judice, all but plain error committed by the trial court in failing to give an instruction under R.C.2923.03(D) was waived by the appellant's failure to object. Further, any error committed by the court in this case does not rise to the level of plain error. The record demonstrates that Agent Fritz testified that the appellant was from Trinidad; that the package to be delivered was from Trinidad; and that the package had been identified by U.S. Customs as one containing marijuana. Inspector Wascak testified that he delivered the package to Ms. Mooney and that the appellant walked through the livingroom of the apartment at the time the package was delivered. Police Commander Barnhard testified he had a radio and acted as the eyes and ears of the delivery. Seconds after he heard the package delivered, he observed the appellant exit the rear of the building and walk towards Coventry. A few minutes later the appellant returned and went back into the apartment.
Police Detective Schmitt testified that prior to the controlled delivery, he conducted surveillance of the area for a two-hour period and that he learned through a utilities check that Ms. Mooney was the occupant of the apartment. During the delivery, he was positioned in the front of the building. After he heard the package delivered, he observed the appellant approach the mail truck, look inside it, and then leave. Detective Schmitt testified that the appellant left the area of the truck when the appellant heard Inspector Wascak exiting down the stairs from the apartment. Based upon his many years of experience, Detective Schmitt assessed the appellant's conduct and found it to be suspicious. Pursuant to a search warrant, a search of the apartment was conducted. The package delivered by Inspector Wascak was recovered. Finally, Detective Schmitt testified that during the police interview when the appellant was asked about the package, he responded that a drum came in the mail. None of the officers present had indicated to the appellant the contents of the package.
It is fundamental that the determination of weight of the evidence and credibility of the witnesses are exclusively within the prerogative of the jury, but even without the testimony of Ms. Mooney in this case, the state's evidence overwhelmingly supports the appellant's conviction for attempted possession of marijuana.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE TRIAL COURT ERRED BY EXCLUDING RELEVANT AND PROBATIVE EVIDENCE OFFERED BY DEFENDANT-APPELLANT.
The appellant argues that the court erred in prohibiting him from thoroughly cross-examining Ms. Mooney. The appellant wished to implicate Desmond Williams, a man formerly involved with Ms. Mooney. Toward that end, the appellant argues on appeal that he wished to question Ms. Mooney regarding the aliases used by Williams, his marijuana use, and his physical abuse of Mooney. The state argues that this evidence was properly excluded as not relevant under Evid.R. 403.
The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in sound discretion of the trial judge. State v. Lundgren(1995), 73 Ohio St.3d 477,487. A reviewing court will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. State v. Reed(1996), 110 Ohio App.3d 749, 752
citing to State v. Sage(1987), 31 Ohio St.3d 173. The term abuse of discretion implies that the court's ruling was unreasonable, arbitrary or unconscionable. State v. Adams(1980), 62 Ohio St.2d 151. To find an abuse of discretion, this court must find that the trial court committed more than an error of judgment. Reed,supra.
The trial court permitted the appellant to elicit testimony from Ms. Mooney that Desmond Williams was the father of her child. Williams had, at least once, stored a pound of marijuana in their refrigerator. Ms. Mooney stated that she witnessed Williams purchase marijuana during the time she was involved with him. Prior to her arrest, it had been approximately one year since Ms. Mooney had seen Williams. The next time she saw him was "couple of days after I got out of jail" (T. 205). The jury, on this evidence alone, could have concluded that Desmond Williams was involved in the delivery of the package. Since the jury already had before it sufficient evidence on which to base an inference of the appellant's innocence, the trial court committed no abuse of discretion in prohibiting the extensive cross-examination requested by the appellant.
The appellant's second assignment of error is overruled.
The third assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT OVERRULED HIS MOTION FOR MISTRIAL AFTER MATERIAL NOT ADMITTED INTO EVIDENCE CAME INTO THE POSSESSION OF THE JURY.
The appellant argues that a new trial should have been granted to the appellant based upon the discovery that the appellant's passport had been included in the exhibits given to the jury. The appellant asserts that it is unknown whether or not the jury examined the passport and that such an irregularity in the proceedings is sufficient under Crim. R. 33(A)(1) to require a new trial. The appellant also states that had the jury examined the evidence, it would constitute misconduct under Crim. R. 33(A)(2). Finally, the appellant contends that the court committed an error of law in denying the appellant's motion for a mistrial.
A motion for a new trial pursuant to Crim. R. 33 is directed to the sound discretion of the trial court and will not be disturbed upon appeal absent an abuse of discretion. State v. Schiebel
(1990), 55 Ohio St.3d 71. An abuse of discretion implies that the court's ruling was unreasonable, arbitrary or unconscionable.Adams, supra. To find an abuse of discretion, this court must find that the trial court committed more than an error of judgment. Reed, supra.
The record reveals that after the jury retired to deliberate, the court made the following statement:
 THE COURT: . . . Jury has a question, can we review Detective Schmitt's notes concerning the first interview with Mr. Riley. I'll instruct them they have all the evidence they're going to have and they should rely on their collective memory.
 The foreperson indicated it's his understanding the passport is not in evidence. The actual passport itself was not in evidence, they should rely on their memory. The bag that had the passport with them, (tape inaudible) so I took it out. I'm letting you know about it.
MR. SEGBARTH: They said —
 THE COURT: It's their understanding this is not evidence. Why do we have it?
 I said you shouldn't have it and I removed it. I"m making it part of the record. You have a motion for mistrial. I'm not going (sic) grant it. Is that your motion?
MR. HOUSTON: I'm debating.
THE COURT: I'm not going to grant it any way.
MR. HOUSTON: In this case I'll make it.
THE COURT: Overruled.
(T. 292-293)
Although the passport should not have been submitted to the jury, it is evident that the jury recognized the mistake and notified the court. Once the mistake was brought to the attention of the court, the court removed the passport and instructed the jury that the passport was not evidence and the members of the jury should rely on their memories. Since the jury was aware that they should not have been given the passport and the court appropriately instructed the jury after the mistake was uncovered, no prejudice accrued to the appellant. The court did not err in denying the appellant's motions for both a mistrial and for a new trial.
As for stating that a new trial should have been granted due to jury misconduct, Crim. R. 33(C) requires an affidavit to support a motion alleging grounds under Crim. R. 33(A)(2). Absent a supporting affidavit, the court may summarily deny the motion for a new trial. State v. Rogers(1990), 68 Ohio App.3d 4. Since the appellant failed to attach an affidavit to his motion, the trial court did not err in denying the portion of the motion brought under Crim. R. 33(A)(2).
The appellant's third assignment of error is overruled.
The fourth assignment of error:
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE NO DIRECT EVIDENCE WAS INTRODUCED OF DEFENDANT-APPELLANT'S INVOLVEMENT IN ATTEMPTED DRUG POSSESSION AND NO EVIDENCE WAS INTRODUCED THAT DEFENDANT-APPELLANT MADE ANY ARRANGEMENT FOR THE PACKAGE TO BE SENT TO THE APARTMENT WHERE DEFENDANT WAS RESIDING WITH A CO-DEFENDANT, NOR OF DEFENDANT'S INTENT TO POSSESS THE PACKAGE.
This court notes that while the assignment of error states only that the verdict was against the manifest weight of the evidence, the argument presented by the appellant asserts that the verdict is supported by insufficient evidence. This court will address both issues.
The appellant sets forth various arguments, but essentially contends that because: 1) there is no direct evidence that the appellant arranged for the marijuana to be shipped to his address; 2) the package was not addressed to the appellant; 3) the appellant did not sign for the package; and, 4) the appellant was not in the apartment at the time of delivery, the sufficiency of the evidence does not support the appellant's conviction. Specifically, the appellant asserts that preparing, planning or arranging for a shipment, without a substantial action toward consummation of the intended crime, would not constitute an attempt to possess marijuana.
The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In State v. Thompkins
(1997). 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida
(1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
By contrast, the Thompkins court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins,(Cook, J., concurring) citing to State v. DeHass(1967), 10 Ohio St.2d 230.
The appellant was convicted of attempted possession of marijuana in violation of R.C. 2925.11(C)(3)(c)/2923.02(A). R.C.2925.11 prohibits a person from knowingly possessing controlled substances, including marijuana. R.C. 2923.02(A) prohibits a person from purposely or knowingly, when purpose or knowledge is sufficient culpability for the commission of an offense, from engaging in conduct that, if successful, would constitute or result in the offense.
As set forth in the first assignment of error, supra. the record demonstrates that Agent Fritz testified that the appellant was from Trinidad; that the package to be delivered was from Trinidad; and that the package had been identified by U.S. Customs as one containing marijuana. Inspector Wascak testified that he delivered the package to Ms. Mooney and that the appellant walked through the livingroom of the apartment at the time the package was delivered. Police Commander Barnhard testified he had a radio and acted as the eyes and ears of the delivery. Seconds after he heard the package delivered, he observed the appellant exit the rear of the building and walk towards Coventry. A few minutes later the appellant returned and went back into the apartment.
Police Detective Schmitt testified that prior to the controlled delivery, he conducted surveillance of the area for a two-hour period and that he learned through a utilities check that Ms. Mooney was the occupant of the apartment. During the delivery, he was positioned in the front of the building. After he heard the package delivered, he observed the appellant approach the mail truck, look inside it, and then leave. Detective Schmitt testified that the appellant left the area of the truck when the appellant heard Inspector Wascak exiting down the stairs from the apartment. Based upon his many years of experience, Detective Schmitt assessed the appellant's conduct and found it to be suspicious. Pursuant to a search warrant, a search of the apartment was conducted. The package delivered by Inspector Wascak was recovered. Finally, Detective Schmitt testified that during the police interview when the appellant was asked about the package, he responded that a drum came in the mail. None of the officers present had indicated to the appellant the contents of the package.
By presenting this evidence the state met its burden of production at trial on each and every element of the crime committed. Similarly, by presenting this evidence the state has appropriately carried its burden of persuasion. It is fundamental that the determination of weight of the evidence and credibility of the witnesses are exclusively within the prerogative of the jury. Here, the state's evidence overwhelmingly supports the appellant's conviction for attempted possession of marijuana.
The appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Heights Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., and ANNE L. KILBANE, J., CONCUR.
 ___________________________________ JAMES D. SWEENEY JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 2923.03 requires the court to give a charge regarding the testimony of an accomplice where the accomplice testifies against the defendant and the defendant is charged with an attempt to commit an offense.