OPINION
Appellant timely appeals his conviction for felonious assault in violation of R.C. § 2903.11(A)(2) following a jury trial. For the following reasons, we affirm the jury verdict.
Appellant, Martin Koliser, Jr., shared an apartment in Salem, Ohio, with Robert Hall, Robert Romine, Jason Russell and Rick Pine. On the evening of December 25, 1996, a group of people gathered at the apartment to drink beer, play cards and listen to music. Some were smoking marijuana. Appellant arrived at the apartment later in the evening and played cards with the others. At some point, Appellant received from or made a telephone call to his wife. The record is unclear as to whether Appellant and his wife were separated or whether Appellant stayed at the apartment because it was significantly closer to his place of employment. During the phone call, Appellant became agitated and slammed down the phone when the conversation ended. Appellant became more agitated when someone increased the music's volume and subsequently told everyone to leave the apartment.
A small scuffle ensued between Appellant and a guest. Robert Hall intervened and ended that altercation. Appellant again told everyone, including Hall, to leave. Appellant followed as everyone left the apartment. When everyone was outside, Appellant began a physical altercation with Hall, during which he bit Hall in the face. Jason Russell intervened and temporarily ended the fray, but it rekindled near the doorway to the apartment building. Appellant announced that he was going to get a knife and entered the apartment. Hall followed Appellant inside, where the fight again broke out. This time, Appellant stabbed Hall twice in the back of the head.
Appellant was indicted on one count of felonious assault in violation of R.C. § 2903.11(A)(2). Following a jury trial, Appellant was found guilty. In a judgment entry filed April 4, 1997, the trial court sentenced Appellant to a definite term of six years of incarceration. On April 25, 1997, Appellant filed his notice of appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON SELF DEFENSE AS AN AFFIRMATIVE DEFENSE TO THE SOLE COUNT OF THE INDICTMENT."
At the close of evidence, Appellant requested that the jury be instructed on the affirmative defense of self-defense. However, the trial court refused the instruction, finding that the evidence did not support such an instruction.
According to Appellant, an instruction on self-defense is appropriate if the defendant establishes that the victim was the aggressor and that the defendant did not provoke the attack. Appellant states that a person has the right to defend himself by use of force from such danger as he reasonably fears.
Appellant contends that his testimony established the three essential elements of self-defense: 1) that he was not at. fault in creating the situation; 2) that he had a reasonable belief that he was in danger of death or great bodily harm; and, 3) that his only means of escaping that harm was through the use of force. In support of his contention, Appellant argues that he was not the aggressor in any of the confrontations between he and Hall. Appellant relies on testimony that Hall pushed him, flipped over a table and asked Appellant if he wanted to fight and that others who were present threatened Appellant. Appellant contends that the final altercation ensued after he had escaped Hall by reentering the apartment and that Hall tackled him from behind.
Appellant claims that he believed that he was in actual danger and that this belief on his part was reasonable. He argues that he reasonably believed the threats of the guests and argues that his fear was compounded by his belief that Hall and the others were affiliated with youth gangs in the area. Appellant concludes that an instruction on self-defense was warranted given this fear for his physical well being and his belief that the use of force was his only means of escape.
This assignment of error lacks merit. A decision as to which instructions are to be given to the jury is within the sound discretion of the trial court. State v. Manley (Jan. 21, 1997), Columbiana App. No. 95-CO-53, unreported, 10. We will not disturb the trial court absent a showing of an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Statev. Adams (1980), 62 Ohio St.2d 151, 157.
Self-defense is an affirmative defense. The burden of going forward with the evidence and the burden of proof was placed on Appellant. R.C. § 2901.05 (A); State v. Palmer (1997),80 Ohio St.3d 543, 563. A defendant must prove self-defense by a preponderance of the evidence and may use his own testimony to do so if necessary. State v. Saliskar (1973), 35 Ohio St.2d 95,96. To sufficiently raise a claim of self-defense, the defendant must show:
 "(1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." State v. Palmer, 563.
However, a trial court properly refuses to instruct a jury on the issue of self-defense where an Appellant has not introduced sufficient evidence, "* * * which, if believed, would raise a question in the minds of reasonable men concerning the existence of such an issue." State v. Palmer, 564.
In the matter before us, the trial court refused to give the instruction as to self-defense requested by Appellant, stressing the fact that Appellant based his defense on the proposition that the stabbing was accidental and Appellant testified thereto consistently. The court stated:
 "Self-defense requires [that] the Defendant had an honest belief he was in eminent danger of death, and great bodily harm, and that his only means of escape from such danger was the use of such force. He denied he used this force for any purpose."
(Tr. 487-88). The court did instruct the jury regarding the affirmative defense of accident.
The trial court's denial of an instruction as to self-defense was not error. Even assuming that Appellant established that threats were made against him and that he feared for his life, Appellant has not presented sufficient evidence on the record that, if believed, would raise the issue that Appellant's actions were in self-defense. Appellant's testimony entirely centers around the defense that, despite his fear of harm, the injury, inflicted upon Hall was accidental. He presented no testimony that he was forced to stab Hall in order to escape danger.
In fact, Appellant's response to questions posed on direct examination by his counsel completely contradict a theory of self-defense. With respect to the events occurring subsequent to the alleged threats made against him but prior to Hall's injury, Appellant's testimony was as follows:
"Q. What was your emotional state at this point?
"A. I was scared and — I was scared.
"Q. Why were you scared?
 "A. Because I thought how in the hell was I going to get out of Salem.
"* * *
"Q. Did you get your knife?
"A. No I did not.
"Q. Why not?
"A. Just — that was the last thing on my mind.
"Q. You were scared, you said.
"A. Yes, I was.
"Q. Wouldn't this be a way to defend yourself?
"A. The knife wasn't even on my mind."
Appellant's testimony with respect to the final altercation in which Hall was stabbed also contradicts a theory of self-defense. Appellant testified that while talking on the telephone with his wife, he spotted the knife on the fireplace mantle and retrieved it to secure it because he believed the police were en route to the apartment (Tr. 468). He stated that Hall then grabbed him from behind (Tr. 469). Appellant then testified as follows:
"Q. What happened with the knife?
 "A. Uh, it just — I was just trying to push him off, and some how he got cut."
(Tr. 469)
"Q. Did you intend to cut him?
"A. No, I did not.
"Q. Did you know you cut him?
"A. No, I did not."
(Tr. 470)
 "Q. Did you intentionally cause that wound to the back of his neck —
"A. — no —
"Q. — that he showed us here?
"A. — I did not.
"Q. Did you intentionally cause that wound to the back of his head?
"A. No, I did not."
(Tr. 474). Upon further questioning by his counsel, Appellant testified as follows:
"Q. Okay. What did you do with the knife at this point?
 "A. I just put it in the sheath and put it on the mantle. I just — knew the police were coming. So . . .
"Q. Why didn't you put it back in your room at this point?
 "A. Why? I mean . . . I didn't — I didn't think, I don't know, I wasn't going to conceal it. It was an accident."
(Tr. 475). Without doubt, Appellant's testimony solely supported his defense that the knife wounds were accidentally inflicted. Appellant did not present sufficient evidence which, if believed, would raise the question as to whether Appellant's actions were undertaken in self-defense. State v. Palmer, at 564.
The Third District Court of Appeals has addressed a situation similar to the one before us and upheld a trial court's refusal to give both a self-defense and accident instruction. State v. Barnd (1993), 85 Ohio App.3d 254. InBarnd, the appellant was convicted of felonious assault after an incident at a bar. The State contended that the appellant struck the victim in the side of the face with a glass. The appellant contended that he accidentally hit the victim in the side of the face with the glass when he responded to a shove from the victim.
In affirming the trial court decision to refuse to give both a self-defense and accident instruction, the court of appeals reasoned that since the defendant contended that the injury was an accident:
 "The defenses of accident and self-defense are inconsistent by definition. Accident involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act. In contrast, a defendant claiming self-defense concedes he had the purpose to commit the act, but asserts that he was justified in his actions."
Id., 260. This doctrine has long been recognized in Ohio. InState v. Champion (1924), 109 Ohio St. 281, the defendant requested instructions as to both self-defense and accident.Id., 286. The Supreme Court stated:
 "The very fact that requests were asked both on accidental homicide and self-defense, under the same evidence, presents a most peculiar paradox — a direct contradiction in terms and truth. Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful. It is similar to a person saying in one breath, `I was insane at the time of the homicide,; and in the next breath, `I shot in the exercise of my right of self-defense, with reasonable grounds therefor, as they appeared to me.'"
Id., 286-87.
In the instant case Appellant presented no testimony that he intentionally cut or stabbed Hall. To the contrary, he stated that he never intended to cut Hall and that he was unaware that Hall suffered a wound, contending instead that the wounds were accidentally inflicted. Appellant did not object to the trial court's instruction to accident. Therefore, the trial court properly refused to give the instruction on self-defense. As the Supreme Court stated in Champion, "If the evidence warrants, the defendant has a right to one request or the other. By no manner of logic, law, or legerdemain is he entitled to both." Id., 287.
For the foregoing reasons, we hold that the trial court did not abuse its discretion in refusing to instruct the jury on the defense of self-defense. Appellant's first assignment of error lacks merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF AGGRAVATED ASSAULT."
At trial, Appellant requested that the trial court instruct the jury as to aggravated assault. Again, the trial court refused this request. Appellant claims that evidence presented at trial satisfied the elements necessary for the requested instruction and that the trial court therefore erred in refusing to instruct the jury accordingly.
We reiterate that the decision as to which jury instructions to give is within the discretion of the trial court. State v.Manley, supra. We will not disturb the trial court's decision absent a showing of an abuse of discretion. Id.
Appellant was convicted of felonious assault in violation of R.C. § 2903.11 (A) (2), which reads in relevant part:
"(A) No person shall knowingly:
"* * *
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance* * *"
Appellant requested a jury instruction on aggravated assault pursuant to R.C. § 2903.12, which reads in relevant part:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either or which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"(1) Cause serious physical harm to another * * *
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance* * *"
Appellant erroneously labels aggravated assault as a lesser included offense of felonious assault. The Ohio Supreme Court has determined that "* * * the offense of aggravated assault is an inferior degree of * * * felonious assault — since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation."State v. Deem (1988). 40 Ohio St.3d 205, 210-211. The Supreme Court further stated that where a defendant presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault. Id., paragraph four of the syllabus; R.C. § 2945.74, Crim.R. 31 (C).
In State v. Shane (1992), 63 Ohio St.3d 630, the Ohio Supreme Court set forth a test to determine what constitutes sufficient provocation to warrant instruction on the lesser degree offense of voluntary manslaughter in a murder prosecution. Id., 634. The Ohio Supreme Court has since applied the same test to a felonious assault prosecution where there was a request for instruction as to aggravated assault.State v. Mack (1998), 82 Ohio St.3d 198, 201. The test to be applied is as follows:
 "First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage."
Id., quoting State v. Shane, 634-635.
In the present case, Appellant argues that an instruction on aggravated assault was warranted as there was evidence that he was provoked by Hall. Appellant's testimony at trial would satisfy the objective standard of the Shane test. Appellant testified that he was facing the mantle in the living room of the apartment and that, "* * *as I turn around [Hall] was in my face saying, `Why did you bite me?' At the same time grabbing me, picking me up like a bear hug. He was picking me up, and bending me backwards, and we went into the stereo. At the same time, he got cut." (Tr. 469). An attack as Appellant described is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Moreover, as the trial court stated at sentencing, "* * * to some extent the victim induced, or put himself in a position where this crime happened." Sentencing Transcript, 11.
Appellant has satisfied the objective portion of the test, however, he has not satisfied the subjective portion of the test. In his brief, Appellant has not pointed to any evidence that he did in fact act in a sudden fit or rage or passion, nor do we find any such evidence on the record. To the contrary, as in his first assignment of error, the evidence in the record contradicts his theory in this assignment of error. As we noted earlier, Appellant's testimony was that Hall was wounded accidentally and that he had did not intend to injure Hall nor had Appellant any immediate knowledge that he stabbed Hall.
With no evidence that Appellant acted upon the provocation of the victim and Appellant's own testimony that he did not so act, the trial court did not abuse its discretion by refusing to instruct the jury as Appellant requested and this assignment of error lacks merit.
Appellant's third assignment of error alleges:
 "THE VERDICT OF THE JURY FINDING APPELLANT `GUILTY' OF FELONIOUS ASSAULT IN VIOLATION OF O.R.C. § 2903.11(A)(2) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the prosecution failed to prove beyond a reasonable doubt an essential element of felonious assault; that Appellant knowingly committed the crime. Appellant relies on his testimony that the injury to Hall was an accident. Appellant also points to his testimony that he discovered the knife on the mantle and that he did not place it in that location (Tr. 466-468). Appellant further argues that the only witness to the altercation testified that Appellant was clothed in only a pair of blue jeans, that he did not see a knife on Appellant and that he did not see Appellant bring the knife into the room were the assault occurred (Tr. 346). Based on this testimony, Appellant concludes that the only rational conclusion to be drawn from it was that Appellant had retrieved the knife from the mantle intending to secure it when, by coincidence, Hall was wounded. Appellant argues that it is unreasonable to conclude that Appellant retrieved the knife from his bedroom to knowingly assault Hall.
The Supreme Court of Ohio has determined that the weight of the evidence:
 "* * * concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary, (6th Ed. 1990), 1594. This Court may reverse on weight of the evidence grounds only after the State has presented both sufficient evidence to support a conviction and has persuaded the fact finder to convict. Id., 388, citingTibbs v. Florida (1982), 457 U.S. 31, 41-43.
When reviewing the sufficiency of the evidence to support a criminal conviction, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Demiduk, (June 24, 1998), Columbiana App. No. 96-CO-16, unreported, citing State v. Jenks (1990), 61 Ohio St.3d 259, paragraph two of the syllabus.
In order to reverse Appellant's conviction based upon the weight of the evidence, we must find that, "* * * the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 387. Furthermore, all three judges on the court of appeals panel reviewing the case must unanimously concur. Id., 389.
We emphasize that, "[t]he weight to be given the evidence and the credibility of witnesses are primarily jury issues."State v. Ballew (1996), 76 Ohio St.3d 244, 249, citing State v.Waddy (1992), 63 Ohio St.3d 424, 430; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Further, we must give deference to the finders of fact, in this case the jury, because they are in the best position to observe the witnesses and their demeanor, gestures and voice inflections and are entitled to believe or disbelieve any witness. State v. Scott
(Mar. 9, 1998), Mahoning App. No. 95 C.A. 140, unreported, citing State v. Antill (1964), 176 Ohio St. 61.
Appellant claims that the State failed to prove that Appellant acted knowingly. Although Appellant, himself, testified that the injury to Hall was accidental, there was sufficient conflicting evidence on the record to establish that Appellant acted knowingly.
The prosecution presented testimony that prior to the stabbing, Appellant stated that, "* * * he was going to go up and grab a knife." (Tr. 268). The prosecution also presented testimony that Appellant swung the knife "furiously" at Hall, (Tr. 332). The victim, Robert Hall, testified that Appellant stabbed him twice, as indicated by two separate entrance wounds (Tr. 370). Viewing this testimony in a light favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Appellant acted knowingly in stabbing Hall.
Although there was conflicting testimony, we must defer to the jury's finding. Their finding does not create a manifest miscarriage of justice necessitating reversal and we therefore hold that this assignment of error lacks merit.
For all the forgoing reasons, we affirm the jury verdict and sentence of the trial court.
Cox, P.J., concurs.
Vukovich, J., concurs.
APPROVED:
 ____________________________ CHERYL L. WAITE, JUDGE