DECISION AND JUDGMENTENTRY
{¶ 1} Appellant, Carl D. Franklin, appeals the Hillsboro Municipal Court's judgment finding him guilty of sexual imposition in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree, and telephone harassment in violation of R.C. 2917.21(B), a misdemeanor of the first degree. On appeal, Appellant asserts that the trial court erred by refusing to enter a Crim.R. 29 judgment of acquittal on both the sexual imposition offense and the telephone harassment offense. As to the sexual imposition offense, Appellant contends that the state failed to produce corroborating evidence as required by R.C. 2907.06(B). We disagree with both ofAppellant's assertions because, after viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of both of these crimes proven beyond a reasonable doubt. Appellant next contends that his trial counsel wasineffective. We disagree. Accordingly, we affirm the judgment of the trialcourt.
 I. {¶ 2} The state charged Appellant with two separate offenses, i.e. sexual imposition and telephone harassment, involving two different victims. After Franklin waived his right to a jury trial, the trial court consolidated the cases for a bench trial.
A. Sexual Imposition
 {¶ 3} Victim I testified at Appellant's bench trial that she met him when he hired her to work at the Paragon Inn in Hillsboro as a housekeeper in 2004. She reported to work on Thanksgiving Day. She said that Appellant explained to her that she was to "[c]lean the rooms, I had to strip down all the beds and remake the beds and put new linens on them, vacuum, clean the bathrooms, take out the trash, make sure that the air conditioning was off or anything using electricity was off before I left the room."
 {¶ 4} Victim I testified that she started stripping the beds, making them, and cleaning the rooms. However, she said that she had trouble figuring out how they did the corner fold on the beds and asked Appellant for help on the second or third room. He showed her how to do it and untucked it so that she could do it herself. She said that he stood so close behind her that "I couldn't even kneel down or bend over without him touching me and I kept trying to move to where I could get the blanket the right way and every time I would move one way he would follow me to where he was right behind me." She said that "[h]is middle section was almost pressed directly up against my back side." Because she felt uneasy, she told him that she had it under control and that she could do the rest of the rooms herself. And, "he let me do the rest of the rooms by myself[.]" She then locked all the doors behind her as she worked because she thought that she had the master key to all the doors and that no one could get in.
 {¶ 5} However, as she cleaned the bathroom of one of the last rooms for the day, she said that "I heard somebody open the door and then I heard the door close and I looked out the bathroom and I seen Mr. Franklin sitting here on the couch that was beside the door." She continued to work. As she went out to plug in a vacuum cleaner near Appellant, "he grabbed ahold of my arm and tried to pull me down to sit on his lap." She said, "no," but he kept telling her that she needed a break. She told him that "I needed to get my cleaning done because my mother was at home sick and I was the only one who my mom had, that I needed to get back home to her."
 {¶ 6} Victim I stated that she went over to the phone in the room to call her mom and realized that "Franklin was standing right behind me." And, "[h]e stuck his hand up the back of my shirt and started trying to massage my back. I told him to stop touching me, he was making me feel uncomfortable and he kept touching me, he grabbed my underwear out the back of my pants and proceeded to tell me that he thought my underwear were cute or sexy, I don't remember exactly what he said. * * *. [H]e then proceeded to take his hand around the front of me and tried to cup my breast." Victim I stated that her mom then answered the phone before he could cup her breast, and Appellant backed away from her and left the room. Her mom came and picked her up. However, before she left, Appellant told her "that it would be best if I didn't tell anybody anything about what had happened" and not to tell his father who owned the place what happened. She said that Appellant offered to give her his red car after she had worked for awhile if she was a good employee. She said that he also offered to pay her car insurance.
 {¶ 7} Victim I said that Appellant's hands are what touched her except when he pressed up against her. She stated that Appellant's hands touched her stomach, butt, hip, side and abdomen. While he touched her, she said that she kept telling him that she did not want to be touched.
 {¶ 8} Although the state called the Victim I's mother as a witness, the trial court would not let her testify because she sat in the courtroom and listened to her daughter's testimony even though the court had ordered a separation of the witnesses, i.e. the witnesses were to wait outside the courtroom until called as a witness. The state then called Sergeant Gregory
L. Barr with the Hillsboro Police Department as its second and last witness involving the sexual imposition offense. He testified that he investigated an allegation by Victim I that Appellant had improperly touched her. He said that Victim I and her mother came to him on the same day as the alleged incident. To refresh his recollection of his conversation with Appellant, the court granted a recess so that he could listen to the taped conversation.
 {¶ 9} After the recess, Appellant's trial counsel stipulated that Victim I was at the Paragon Inn on the day in question. The court sustained several objections regarding Sergeant Barr's conversation with Victim I's father about the past due wages that Appellant owed Victim I. The court did not admit into evidence any other relevant testimony from this witness.
 B. Telephone Harassment {¶ 10} Victim II testified that she came to know Appellant when she worked at the Paragon Inn in 2004. She started in April and worked off and on until Christmas time. She admitted that Appellant helped her by providing her with money for a bail bondsman to assist in someone's release from jail, and she never paid him back. She left because of the sexual comments that Appellant made to her.
 {¶ 11} She said that after she left, Appellant would call her home and want her to come to work. She lived with her mother. He would call "[a]t least two or three times a day." She knows that the calls were placed from the Paragon Inn because she has caller ID. She said that some of the calls went unanswered, and he left messages on the answering machine. However, she did not have a tape of the messages.
 {¶ 12} She testified that he called at least one hundred times. (On cross-examination, she said that he called thirty to forty times after she quit.) She testified that these calls came after she told him to stop calling because "from the first time he called I asked him not to call back." He knew that the calls annoyed her because she told him. From the first call, she told him to leave her alone. He also sent her flowers sometime after she told him to stop calling. She never had a romantic relationship with him. He finally stopped calling after she complained to the law enforcement authorities.
 {¶ 13} Victim II's mother testified that she and her daughter live together and that Appellant called their residence repeatedly from the Paragon Inn. She said that she received five or more calls. She told him that her daughter did not want to work at the Inn anymore and she further told him not to call. She said that the calls stopped "[a]fter we filed this restraining order[.]" She admitted that Appellant put some money up for a bail bondsman and that she had not paid the money back.
 C. {¶ 14} After the state rested, Appellant moved the court for Crim.R. 29 acquittal of both offenses. The court denied his motion. After taking a recess to consult with his attorney, Appellant did not present any testimony. Appellant renewed his Crim.R. 29 motion for acquittal. The court again denied his motion.
 {¶ 15} The trial court on the record considered each offense separately. The court first found Appellant guilty of sexual imposition. Before the trial court could move on to the second offense, Appellant said, "I would like to testify, Your Honor." The court stated, "That time has passed, sir."
Appellant replied, "I did not touch anybody." The court explained, "Mr. Franklin, the case is over with, I'm now making my decision." The court then also found Appellant guilty of telephone harassment and sentenced him for both offenses accordingly.
 {¶ 16} Appellant now brings his timely appeal, assigning the following three assignments of error:
 {¶ 17} "I. THE COURT BELOW ERRED WHEN IT DENIED MR. FRANKLIN'S RULE 29 MOTION ON THE SEXUAL IMPOSITION CHARGE BECAUSE THERE WAS NO CORROBORATION AND BECAUSE THE EVIDENCE WAS INSUFFICIENT.
 {¶ 18} II. THE COURT BELOW ERRED WHEN IT FAILED TO GRANT THE RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL ON THE TELPHONE HARASSMENT CASE AS THERE WAS NO EVIDENCE OF A PURPOSE TO ABUSE, THREATEN OR HARRASS.
 {¶ 19} III. THE DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW BECAUSE OF THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
 {¶ 20} Appellant argues in his first assignment of error that the state failed to prove beyond a reasonable doubt every element of the offense of sexual imposition. Specifically, he asserts that the trial court erred by failing to grant his Crim.R. 29 motion for acquittal because it did not require the state to comply with R.C. 2907.06(B).
 {¶ 21} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356; State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 22} R.C. 2907.06(A)(1) provides in part, "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.01(B) defines "sexual contact" to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 23} R.C. 2907.06(B) states, "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." However, the corroborating evidence "need not be independently sufficient to convict the accused." State v. Economo
(1996), 76 Ohio St.3d 56, 1996-Ohio-426, 666 N.E.2d 225, syllabus. Rather, even "[s]light circumstances or evidence which tends to support the victim's testimony is satisfactory." Id. at syllabus. Corroborating evidence is not an element of the offense, but an ancillary evidential requirement that the trial court must decide. Id. at 60-62.
 {¶ 24} The state asserts that it did produce such corroborating evidence, and, therefore, no violation of Appellant's due process rights occurred. The state submits that the corroborating evidence it produced is similar to the evidence the Ohio Supreme Court found sufficient to satisfy the corroboration requirement in Economo . The state further claims that this court applied the Economo test in State v. White, Washington App. No. 04CA52, 2005-Ohio-4506.
 {¶ 25} In Economo, the corroborating evidence consisted of: (1) confirmation that the victim had an appointment with the defendant on the date in question; (2) a witness' testimony that the victim appeared frightened and upset, and asked to not be left alone with the defendant; and (3) a witness' testimony that the victim was on the verge of crying upon exiting a room where she had been alone with the defendant.Economo at 60.
 {¶ 26} In White, supra, we found sufficient corroboration where other evidence showed that White admitted to the investigating officer that: (1) the victim came to his residence to deliver a sub on the date and time in question; (2) he came to the door only wearing underwear; (3) he had trouble finding money; and (4) he was intoxicated. In addition, the officer testified that the victim was upset when she filed the report.
 {¶ 27} We also applied the Economo test in State v. Laferty (April 21, 1999), Vinton App. No. 97CA17, 1999 WL 249720, and found sufficient corroboration where other evidence showed that the victim's car was in defendant's drive way at the date and time of offense, and other persons testified that she was upset and crying on the day after the incident.
 {¶ 28} We also note that in State v. Ervin (Aug. 25, 1987), Jackson App. No. 551, 1987 WL 16087, we found insufficient corroboration of the victim's testimony as required by R.C. 2907.06(B). In that case, the corroborating evidence consisted of the investigating officer's testimony that the victim and her mother reported the allegations to him, as well as testimony by the victim's school counselor that the victim had reported the alleged crimes to her. However, we decidedErvin prior to the Supreme Court of Ohio's holding in Economo .
 {¶ 29} Prior to the Economo decision, there was much discord among Ohio Appellate Courts as to the appropriate standard to be applied when making determinations regarding whether the R.C. 2907.06(B) corroboration requirement was satisfied. Econono, supra, (concurring opinion by Justice Resnick). In Ervin, we held that "(t)he corroboration required by the statute is of facts which go to the very substance or foundation of the crime-in-effect, the corpus delecti ." Subsequent to our holding in Ervin, the Supreme Court of Ohio clarified the standard to be applied when reviewing evidence for purposes of meeting the corroboration requirement. Economo, supra. Specifically, the Court held that "[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." Id. at paragraph one of the syllabus. As such, theEconomo test is less stringent than the test previously applied by this Court in Ervin .
 {¶ 30} Here, the corroborating evidence consisted of Sergeant Barr's testimony that the victim, along with her mother, came to him on the day in question, i.e. Thanksgiving Day, and alleged that Appellant had improperly touched her on that day. In addition, Appellant's counsel stipulated that the victim was at the Paragon Inn on the date in question. We find that this corroboration is sufficient, thus meeting the test set forth in Economo . See, also, White, Laferty .
 {¶ 31} Thus, after viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the crime of sexual imposition proven beyond a reasonable doubt. Therefore, we cannot conclude that the trial court erred when it overruled Appellant's Crim.R. 29 motion for acquittal. Accordingly, we overrule Appellant's first assignment of error.
III.
 {¶ 32} Appellant argues in his second assignment of error that the state failed to prove beyond a reasonable doubt every element of the offense of telephone harassment. Specifically, he focuses on the "purpose" element of the telephone harassment offense and contends that the state might have shown the mental state of the alleged victim, i.e. annoyance, but that is not the test. Instead, he asserts that the state must show that his "purpose" was to abuse, threaten or harass the victim. He maintains that the state did not produce any evidence to show that his purpose was to abuse, threaten or harass the alleged victim.
 {¶ 33} Appellant cites several cases in support of his argument and concludes that "[i]n each of these cases, the evidence was focused on the defendant's purpose, not on the victim's feelings." (Sic.) We will not review these cases in this opinion because we agree with Appellant's conclusion, i.e. we need to focus on the state's evidence showing Appellant's purpose and not focus on the evidence showing the victim's feelings.
 {¶ 34} We use the same standard of review for this assignment of error involving a Crim.R. 29 motion as we used in Appellant's first assignment of error. As we stated earlier, "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
 {¶ 35} R.C. 2917.21(B) states that "(B) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." (Emphasis added.)
 {¶ 36} Here, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential element of "purpose" of the crime of telephone harassment proven beyond a reasonable doubt.
 {¶ 37} Victim II testified that she quit working at the Paragon Inn because of the sexual comments that Appellant made to her. She said that he called at least two or three times a day for a total of thirty or forty times after she quit working. She told him the first time that he called to not call back. He sent her flowers after she told him to not call her anymore. Victim II's mother also told him not to call anymore. They both testified that the calls only stopped after they filed a report with the law enforcement authorities.
 {¶ 38} We find that a trier of fact could infer from this evidence that Appellant made the phone calls to his victim with a purpose to abuse, threaten or harass her. Consequently, we find that the trial court did not err when it overruled Appellant's Crim.R. 29 motion for acquittal of the telephone harassment offense. Accordingly, we overrule Appellant's second assignment of error.
 IV. {¶ 39} Appellant argues in his third assignment of error that his trial counsel was ineffective for three reasons. He maintains that his trial counsel: (1) stipulated that the victim of the alleged sexual imposition offense was at the Paragon Inn on the date in question; (2) failed to effectively cross-examine the same victim regarding her prior inconsistent statements; and (3) rested without Franklin's testimony.
 {¶ 40} In order to reverse a conviction or sentence based upon ineffective assistance of counsel a reviewing court must find: (a) deficient performance, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."State v. Ballew (1996), 76 Ohio St.3d 244, 255, 1996-Ohio-81,667 N.E.2d 369; citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. If a court can resolve a claim of ineffective assistance of counsel under only one prong of this two-pronged test, then the court does not have to analyze both prongs. See, e.g., State v. Madrigal
(2000), 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52.
 {¶ 41} With regard to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v.Hasting (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974. Additionally, with regard to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694.
 {¶ 42} Appellant first asserts that he received ineffective assistance of counsel in that his trial counsel stipulated that Victim I was at the Paragon Inn on the date in question. Appellant contends that trial counsel's stipulation obviated the need for the State to prove corroboration. We disagree.
 {¶ 43} A review of the record reveals that Appellant's trial counsel only made the stipulation after Sgt. Barr listened to a tape recording, off the record, of Victim I and her mother's report that was made to him after the incident at the Paragon Inn. As noted supra, in order to show deficient performance, Appellant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland at 689. Trial counsel more than likely agreed to the stipulation as a strategic move in order to avoid additional and more damaging information, possibly contained in the tape recording, from being introduced to prove that fact. As such, we cannot conclude that Appellant has overcome the presumption that trial counsel's decision to stipulate to this evidence was anything other than sound trial strategy.
 {¶ 44} Further, we disagree with Appellant's suggestion that Victim I's presence at the Paragon Inn on the day in question would alone satisfy the corroboration requirement. Instead, our decision is based not only on the stipulation, but also on Victim I's reporting of the incident to Sgt. Barr, the same day that the incident occurred.
 {¶ 45} Appellant next asserts that he received ineffective assistance of counsel because his trial counsel failed to effectively cross-examine the same victim regarding her prior inconsistent statements. In his brief, Appellant admits that "[n]o single inconsistency stands out as a 'smoking gun' where Trial Counsel could have demonstrated to the trial court that the deposition testimony was wholly irreconcilable with trial testimony." Aside from this statement, Appellant sets forth no specific argument as to what inconsistencies even exist or to what degree these inconsistencies would have changed the outcome of the trial. Thus, even if Appellant was able to demonstrate deficient performance on the part of his trial counsel, he cannot demonstrate any prejudice as a result of that deficient performance.
 {¶ 46} Finally, for purposes of this opinion, we will assume that Appellant's "I would like to testify" argument involved both the sexual imposition offense and the telephone harassment offense. Aside from his simple statement, made after his trial was completed, that he did not touch anyone, Appellant does not indicate in his brief, and we cannot tell by looking at the record, what he would have testified to. Without some indication of what Appellant's testimony would have been, we cannot find that Appellant was prejudiced by his trial counsel's decision to not call him to the stand to testify. See, e.g., State v. Hamilton
(April 2, 1997), Lorain App. No. 96CA6456, 1997 WL 164320. Stated differently, we cannot find that the result of the trial would have been different. Further, a review of the record reveals that Appellant did not voice his desire to testify until after it became evident that he would receive an unfavorable outcome, i.e. the trial court announced its finding of guilt in connection with the sexual imposition charge. Therefore, Appellant has failed to show that his trial counsel was ineffective. Accordingly, we overrule Appellant's third assignment of error.
 V. {¶ 47} In conclusion, we overrule each of Appellant's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.