[Cite as *State v. Grigsby*, 2018-Ohio-2623.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17-CA-73 |
| | : | |
| ZACHARIAH GRIGSBY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
Municipal Court, Case No. 17-CRB-385

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      June 28, 2018

APPEARANCES:

For Plaintiff-Appellee:                               For Defendant-Appellant:

AMY S. DAVISON                                  CHRIS BRIGDON
40 West Main Street                           123 Stirling Way
Newark, OH 43055                            Etna, OH 43062

*Delaney, J.*

{¶1} Defendant-Appellant Zachariah Grigsby appeals the July 20, 2017 sentencing entry of the Licking County Municipal Court.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On February 6, 2017, the manager of the BP gas station located at 900 North 21st Street in Newark, Ohio, placed a book of "Max the Money" lottery tickets on the gas station store counter. The store manager had incorrectly scanned the lottery ticket book into the store records so he put the lottery ticket book aside to fix the error later. The store manager had not yet activated the lottery ticket book with the Ohio Lottery Commission. Each ticket in the lottery ticket book was worth $30.00, with a total book value of $750.00. The lottery tickets from the "Max the Money" lottery ticket book are physically larger than other lottery tickets because of the ticket's higher value. The store manager left the store on February 6, 2017 and the lottery ticket book was on the counter when he left.

{¶3} A winning lottery ticket cannot be cashed until it is activated with the Ohio Lottery Commission. A lottery ticket book is activated with an Ohio Lottery machine located in the gas station store. The Ohio Lottery Commission regulates the lottery machine and tracks when lottery ticket book is activated and later settled. When a lottery ticket book is sold, the book is settled through the lottery machine. The lottery machine prints out a paper report when a lottery ticket book is activated and settled.

{¶4} On February 6, 2017, after the store manager left, two employees were working their shift at the BP gas station store: Defendant-Appellant Zachariah Grigsby and S.P. Grigsby's shift ended at approximately 10:00 p.m. The store manager stated he

may have shown the employees how to activate a lottery ticket book with the lottery machine. Per company policy, however, employees were not permitted to purchase lottery tickets during their work hours.

{¶5}   On February 7, 2017, the store manager could not locate the lottery ticket book he placed on the store counter. He called the Ohio Lottery Commission which stated its records showed the lottery ticket book was activated and settled during the time period of 7:54 p.m. to 7:59 p.m. on February 6, 2017. The Ohio Lottery Commission also told the store manager that on February 6, 2017, two tickets were cashed from the lottery ticket book at a Speedway gas station on Church and 21st Street in Newark at approximately 10:25 or 10:30 p.m.

{¶6}   The BP gas station store has at least 15 video cameras within the store continuously recording store activity. The store manager reviewed the video camera recordings for the time periods stated by the Ohio Lottery Commission and observed Grigsby at the lottery machine. He did not observe the second employee at the lottery machine. The video showed something printing from the lottery machine. Grigsby took the print out and threw it away in the trash can. The store manager next reviewed a video recording showing the outside of the gas station. In this video, the store manager observed Grigsby taking the trash from the store to the dumpster outside of the gas station. He then left in a waiting car. The video did not show the other store employee at the dumpster. The store manager checked the dumpster and found the activation and settlement reports from the missing lottery ticket book.

{¶7}   The store manager next called the store manager at the Speedway where the Ohio Lottery Commission said the two lottery tickets were cashed. He asked the store

manager to review the store video recordings at approximately 10:30 p.m. to see who cashed the two lottery tickets. He gave the store manager a description of Grigsby. The Speedway store manager reviewed the video recording and observed a man matching the BP store manager's description of Grigsby cashing a lottery ticket. Based on her experience, the Speedway store manager recognized the lottery ticket being cashed was of higher value because of the ticket's size.

{¶8} The BP store manager contacted the Newark Police Department. Officer Troy Cochran reviewed the video recordings from BP and Speedway. Based on the video recordings and the information from the store manager, Officer Cochran arrested Grigsby for theft, a first-degree misdemeanor in violation of R.C. 2913.02.

{¶9} The matter proceeded to a jury trial. At trial, the State presented the testimony of the BP gas station store manager, the Speedway store manager, and Officer Cochran. The State also submitted into evidence the video recordings from the BP and Speedway stores and the printed reports found in the dumpster. Grigsby did not testify. The jury found Grigsby guilty of theft. On July 20, 2017, the trial court sentenced Grigsby to 90 days in jail, a $150.00 fine plus court costs, and $180.00 in restitution.

{¶10} It is from this judgment Grigsby now appeals.

## ASSIGNMENT OF ERROR

{¶11} Grigsby raises one Assignment of Error:

{¶12} "APPELLANTS [sic] CONVICTION OF THEFT WAS IN ERROR DUE TO THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS

{¶13} In Grigsby's sole Assignment of Error, he argues his conviction is against the manifest weight of the evidence. In the body of his appellate argument, however, he also argues his conviction was against the sufficiency of the evidence. We will address both arguments.

{¶14} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶15} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering

a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶16} Grigsby was found guilty of theft, in violation of R.C. 2913.02, which states:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation.

{¶17} Grigsby argues there was insufficient evidence for a jury to find beyond a reasonable doubt that he exerted control over the lottery ticket book. He also argues the manifest weight of the evidence did not show that Grigsby exerted control over the lottery ticket book. Grigsby is correct that the evidence presented at trial did not show Grigsby holding the lottery ticket book. Reviewing the matter in a light most favorable to the prosecution, the time-line of evidence established by the information from the Ohio Lottery Commission, store video recordings, and printed lottery machine reports could convince a jury of the defendant's guilt for theft beyond a reasonable doubt.

{¶18} There was no factual dispute that the BP store manager left the "Max the Money" lottery ticket book on the store counter. The store manager testified he did not

activate the lottery ticket book before he left it on the store counter. The next day, after Grigsby's shift, the store manager discovered the lottery ticket book was missing. The lottery ticket book could only be activated through the lottery machine. The Ohio Lottery Commission stated the lottery ticket book was activated between 7:54 and 7:59 p.m. on February 6, 2017. The BP store video recording showed Grigsby by the lottery machine at that same time period. The video recording showed the lottery machine generate a printed report, which Grigsby is seen throwing away and then he is observed taking that trash to the dumpster. The store manager discovered the lottery machine reports in the dumpster. The lottery machine reports found in the dumpster showed the "Max the Money" lottery ticket book was activated and settled. Grigsby's shift at BP was over at 10:00 p.m. Grigsby is observed in a video recording cashing lottery tickets at a nearby Speedway at approximately 10:30 p.m. The Ohio Lottery Commission reported two tickets from the missing "Max the Money" lottery ticket book were cashed at a nearby Speedway at approximately 10:30 p.m.

{¶19} There is sufficient evidence in this case to demonstrate that Grigsby exerted control over the "Max the Money" lottery ticket book. The State's witnesses provided substantial circumstantial evidence. *State v. Yoder*, 5th Dist. Licking No. 16-CA-54, 2017-Ohio-903, ¶ 44 citing *State v. Weller*, 10th Dist. Franklin Nos. 07AP–289, 07AP–290, 07AP–291, 2007–Ohio–6598, ¶ 18. The Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154–155, 529 N.E.2d 1236 (1988). In fact, circumstantial evidence may " 'be more certain, satisfying and persuasive than direct evidence.' " *State v. Ballew*, 76 Ohio St.3d 244, 249,

667 N.E.2d 369 (1996), quoting *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶20} We find that based on the evidence and testimony of all the witnesses, viewed in a light most favorable to the prosecution, as is required, a rational trier of fact could have found beyond a reasonable doubt that Grigsby was guilty of theft. Thus, we find the record contains sufficient evidence to support Grigsby's conviction. We further find that a trier of fact could reasonably infer that Grigsby exerted control over the lottery ticket book. Thus, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Grigsby guilty. Therefore, we find that Grigsby's conviction is not against the manifest weight of the evidence.

**CONCLUSION**

{¶21} The judgment of the Licking County Municipal Court is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

E. Wise, J., concur.